IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:11-CV-226-BO

| | |
|---|---|
| JEFFREY C. PAYNE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| WHOLE FOODS MARKET GROUP, INC., ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint [DE 4]. Plaintiff filed a Response on July 11, 2011 [DE 13]. Plaintiff has failed to allege a plausible claim for relief on his claims for wrongful discharge and intentional infliction of emotional distress, and therefore Defendant's Motion is GRANTED.

## BACKGROUND

This lawsuit arises out of Plaintiff Jeffrey Payne's termination of his at-will employment from Defendant Whole Foods Market Group, Inc. ("Whole Foods") in April, 2008. At the time of his termination, Mr. Payne was employed as a baker in the Pastry Department at Whole Foods' Wellspring Bakehouse in Morrisville, North Carolina. Whole Foods' General Information Guide ("GIG"), its employee handbook, provides that an employee is tardy if he arrives more than ten minutes late to his workstation and that, if he is more than thirty minutes late, he will be marked absent. The handbook further provides that an employee must call his manager one hour in advance of his scheduled shift to avoid an unexcused absence. One unexcused absence is considered a "no-call/no-show," which is a terminable offense [DE 1-1 at 3].

On the morning of April 4, 2008, Mr. Payne's truck had mechanical problems and he was late to work as a result. Because he did not inform his manager of his absence prior to the start of his shift, he was marked absent as a "no-call/no-show" and was later terminated on April 8, 2008 as a result of the noted absence. Mr. Payne appealed his termination through Whole Foods' internal process, and his appeal was subsequently denied as untimely. Appeals through this internal process must be postmarked within fourteen days of termination, and Mr. Payne's appeal was postmarked April 22, 2008.

Mr. Payne also alleges that he was subject to conduct at work that caused him to suffer emotional distress. This conduct included "ostracism, targeted criticism, false and anonymous accusation, and periodic intentional efforts to overwhelm him with work" [DE 1-5 at 28]. Mr. Payne cites to incidents in which his co-workers played "indecent music," engaged in "indecent conversation," were "mean" to him, and "withheld assistance" from him [DE 1-5 at 19-26].

Mr. Payne filed a complaint in Wake County Superior Court on April 7, 2011, alleging wrongful discharge in violation of North Carolina public policy and intentional infliction of emotional distress [DE 1-1]. He amended his complaint on April 13, 2011 [DE 1-2-1-7]. On May 9, 2011, Whole Foods removed the case to this Court [DE 1]. Whole Foods moved to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted [DE 4].

## DISCUSSION

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) will succeed if a plaintiff fails to establish a "plausible" claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009). Mr. Payne asserts claims for (I) wrongful discharge and (II) intentional infliction of emotional distress.

Because Mr. Payne fails to establish a plausible claim for relief, both claims are dismissed.

## I. Wrongful Discharge

North Carolina follows the policy of at-will employment, which means that, absent an employment contract for a definite term, the employment relationship can be terminated at any time, for any reason, at the will of either the employer or the employee. *Kurtzman v. Applied Analytical Indus., Inc.*, 493 S.E.2d 420, 422 (N.C. 1997). Employers and employees can exempt themselves from the at-will presumption by signing a contract with a definite time period of employment. No employment contract existed in this case. Additionally, employers are prohibited from discharging employees based on impermissible characteristics, such as the employee's age, race, sex, religion, national origin, or disability, or in retaliation for filing certain claims against the employer. *See, e.g.*, 29 U.S.C. § 623 (a)(1) (Age Discrimination Act); 42 U.S.C. § 2000e-2a (1) (Equal Employment Opportunities Act); 42 U.S.C. § 12112(a) (Americans With Disabilities Act); N.C. Gen. Stat. § 95-241 (prohibiting discharge in retaliation for filing workers' compensation, OSHA, and other claims). Mr. Payne does not allege that his discharge was based on any of these impermissible characteristics or protected actions.

Finally, North Carolina has recognized a limited public policy exception to the employment-at-will rule. *Coman v. Thomas Mfg. Co.*, 381 S.E.2d 445, 447 (N.C. 1989). However, this exception is extremely narrow and encompasses only cases where judicial intervention was needed "to prohibit status-based discrimination or to ensure the integrity of the judicial process or the enforcement of the law." *Kurtzman*, 493 S.E.2d at 423. It is important to note that an at-will employee may be terminated for *no* reason at all, and therefore bad reasons, even nonsensical ones or pretextual ones, are not sufficient to require judicial intervention into the employer-employee relationship. Courts intervene in North Carolina's at-will employment

scheme only in the most extraordinary of circumstances. These situations include cases where: (1) an employer discharged an employee for refusal to violate state or federal law, *Coman*, 381 S.E.2d at 447, or (2) an employer discharged an employee in contravention of express public policy declarations contained in the North Carolina General Statutes, *Amos v. Oakdale Knitting Co.*, 416 S.E.2d 166, 169 (N.C. 1992). In *Coman*, the Supreme Court of North Carolina held that an employer could not discharge an employee for refusing to violate federal transportation regulations. 381 S.E.2d at 449. In *Amos,* the court held that an employer could not discharge an employee for refusing to work for less than the statutory minimum wage. 416 S.E.2d at 173. Mr. Payne seeks to impose a "reasonableness" requirement on terminations of at-will employees in his Response [DE 13 at 11], but such a requirement is not borne out by North Carolina case law. Unless the termination is discriminatory based on a protected characteristic, retaliatory based on protected conduct, or punishes compliance with federal or state law, at-will employment protects the discharge.

Mr. Payne cites to North Carolina General Statutes section 50B-5.5(a) to support his contention that employees may not be disciplined for taking time off from work [DE 13 at 12]. However, this statute exclusively protects victims of domestic violence who require leave in order to obtain or attempt to obtain relief provided by law. This statute does not provide a blanket exemption to discipline for time off from work. Rather, it carves out a very narrow exception to protect victims of domestic violence from being punished at work for leave necessary to address their safety concerns.

It should also be noted, in response to Mr. Payne's allegation that he was improperly denied an internal appeal, that an at-will employee is not entitled to any internal appeal and, therefore, denial thereof is not a cognizable injury. Even if the denial was due to a mathematical

error, it does not convert a proper, at-will discharge into a wrongful discharge.

As the Court finds no connection to any of the recognized public policy exceptions, Mr. Payne has failed to state a plausible claim for relief on the grounds of wrongful discharge, and that claim is dismissed.

## II. Intentional Infliction of Emotional Distress

To state a plausible claim for intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct by the defendant (2) which was intended to and does in fact (3) cause severe emotional distress. *Waddle v. Sparks*, 414 S.E.2d 22, 27 (N.C. 1992).

Conduct is extreme and outrageous if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Smith-Price v. Charter Behavioral Health Sys.*, 595 S.E.2d 778, 782 (N.C. Ct. App. 2004). The behavior must be more than "mere insults, indignities, threats,...and...plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate or unkind." *Hogan v. Forsyth Cnty.*, 340 S.E.2d 116, 123 (N.C. Ct. App. 1986). Although the conduct alleged in Mr. Payne's complaint may have been unprofessional, at times even rude or contemptible, it does not rise to the level that North Carolina courts have required in order to impose liability for intentional infliction of emotional distress. For example, the North Carolina Court of Appeals did not find conduct to be extreme and outrageous when a defendant yelled and threw menus at a plaintiff and interfered with her supervision of employees. *Hogan*, 340 S.E.2d at 122-23. Nor did it find extreme and outrageous conduct where an employee caused embezzlement charges to be filed against his employer and relayed negative and accusatory comments to the employer's creditors and potential clients. *Ausley v. Bishop*, 515 S.E.2d 72, 80

(N.C. Ct. App. 1999). Mr. Payne alleges that he suffered from "ostracism, targeted criticism, false and anonymous accusation, and periodic intentional efforts to overwhelm him with work" [DE 1-5 at 28]. This type of conduct, although unpleasant, does not suffice as prima facie evidence of extreme and outrageous conduct.

Furthermore, Mr. Payne has not made a plausible claim that his emotional distress was severe. To show severe emotional distress, a plaintiff must "do more than simply state that he has suffered severe emotional distress; there must be evidence that he has suffered from an emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *May v. City of Durham*, 525 S.E.2d 223, 230 (N.C. Ct. App. 2000) (internal quotations omitted). Mr. Payne noted that he felt "embarrassed, stigmatized, smeared, dirtied, sullied, robbed, etc." [DE 1-5 at 29]. However, these feelings of "fear, embarrassment, and humiliation" are insufficient, standing alone, to allege that his emotional distress was severe. *See Kaplan v. Prolife Action League of Greensboro*, 431 S.E.2d 828, 838 (N.C. Ct. App. 1993). Although an actual diagnosis by medical professionals is not always required or necessary, *Soderlund v. Kuch*, 546 S.E.2d 632, 639 (N.C. Ct. App. 2001), mere temporary fright, disappointment, or regret will not suffice to satisfy the element of severe emotional distress. *See Estate of Hendrickson ex rel. Hendrickson v. Genesis Health Venture, Inc.*, 565 S.E.2d 254, 265 (N.C. Ct. App. 2002).

As Mr. Payne has failed to allege a plausible claim for intentional infliction of emotional distress, that claim is also dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Amended

Complaint [DE 4] is GRANTED.

SO ORDERED, this the 19 day of September, 2011.

                                                  TERRENCE W. BOYLE
                                                  UNITED STATES DISTRICT JUDGE